UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| CHANDA DYSON ROBERTSON | CIVIL ACTION |
| v. | NO. 19-11912 |
| GREENBRIER HOSPITAL, LLC, *d/b/a* COVINGTON BEHAVIORAL HEALTH HOSPITAL, ET AL. | SECTION "F" |

ORDER AND REASONS

Before the Court is the defendants' motion to dismiss.  For the reasons that follow, the motion is GRANTED.  Within 14 days, the plaintiff shall be permitted one opportunity to amend her deficient claims, if she can in good faith do so.

**Background**

This workplace discrimination lawsuit arises from allegations that a hospital employer denied a part-time employee a full-time Recreational Therapist position because of her son's disability, in violation of the Americans with Disabilities Act, and later terminated her employment in retaliation for filing an EEOC charge concerning the alleged associational disability discrimination, in violation of Title VII of the Civil Rights Act.

1

Greenbrier Hospital, LLC, d/b/a Covington Behavioral Health Hospital, is a 60-bed residential facility that specializes in treating adult patients who have experienced acute changes in their emotional and mental wellbeing. The hospital provides psychiatric services and therapeutic interventions designed to alleviate stress, provide stability, and improve each patient's ability to live a productive and satisfying life.

On May 29, 2014, Chanda Dyson Robertson was hired by Covington Behavioral Health Hospital as a part-time recreational therapist. As a recreational therapist, Ms. Robertson created, implemented, and coordinated programming for the patients, focusing on recreation, leisure, and life skills. Ms. Robertson reported to the facility's Director of Social Services.

In late October 2017, in implementing a reduction-in-force policy, the facility imposed a hiring freeze. In November 2017, one of the two full-time Recreational Therapists resigned from Covington. "The job posting from May 2017 for the CTRS-Certified Recreational Therapist was still open at the time," it is alleged, "so individuals had the ability to submit applications for the position." On November 22, 2017, Ms. Robertson applied for the full-time position following the former therapist's resignation.

However, because of the hiring freeze, Covington did not consider hiring anyone for the position at that time.

About a week after Ms. Robertson applied for the position, her supervisor, the Director of Social Services, left employment at the hospital. Ms. Robertson then approached Covington's CEO, Wes Crawford, and told him that her former supervisor had offered her the full-time Recreational Therapist position. Mr. Crawford told Ms. Robertson that, in fact, because of the hiring freeze, he could not approve any offer to transfer her to the full-time position.

On March 27, 2018, Covington hired Charles Washington as a full-time Recreational Therapist. Angela Bliss, who had replaced the outgoing Director of Social Services, was Ms. Robertson's supervisor. Ms. Bliss told Ms. Robertson, it is alleged, that she (Ms. Robertson) was not chosen as the full-time Recreational Therapist "because she had a disabled son." Ms. Robertson "assured all relevant parties that her son's disability would not preclude her from performing" the full-time Recreational Therapist position because she would hire a caregiver for her son.

On July 22, 2018, Ms. Robertson filed a charge with the Equal Employment Opportunity Commission, alleging associational disability discrimination in violation of the Americans with

Disabilities Act. Specifically, Ms. Robertson named "Acadian Behavior Health" as her employer and, in Charge Number 461-2018-01550, wrote:

> I have been employed as a part-time Recreational Therapist for about 4 ½ years. My immediate supervisor is Angela Bliss and the CEO is Wesley Crawford. In November 2017, I applied and was selected for the full-time position of Recreational Therapist. Mr. Crawford terminated that position and returned me to the part-time position indicating there were no funds for a full-time position. In March 2018, I applied again for the full-time position of Recreational Therapist. I was not selected. Ms. Bliss informed me that Mr. Crawford did not select me because of my dependability because I have a disabled son even though I do not have any attendance issues or disciplinary actions against me. The company employs more than 15 persons.
>
> I believe I was denied a promotion because I am a caregiver to my disabled son which is a violation of the Americans with Disabilities Act as amended.

From July 23, 2018 to September 27, 2018, Ms. Robertson continued to work diligently and "received constant praise and commendation for the quality of her work." On September 27, 2018, Ms. Robertson met with Human Resources, at which time the hospital accused Ms. Robertson of taking information out of patients' charts and taking photos at the facility in violation of company policy. Ms. Robertson alleges that these accusations were made in retaliation for her EEOC complaint. Although Ms. Robertson admits that she took a photograph of herself at the facility in July 2018,

she alleges that this occurred months before the anti-photography policy became effective in September 2018.

On October 2, 2018, the Human Resources Director suspended Ms. Robertson for taking pictures at the facility and for leaving the September 27th meeting without permission. Her employment was terminated on October 22, 2018.

On April 18, 2019, Ms. Robertson lodged a second charge of discrimination with the EEOC. In Charge Number 461-2019-00162, Ms. Robertson named "Covington Behavioral" as her employer and alleged retaliation, charging:

> I was suspended on October 2, 2018 and subsequently discharged from my Recreational Therapist position on October 22, 2018. I had worked for the above-referenced employer for approximately 4 years.
>
> I was suspended following accusations that I took photos and information from patient charts for my pending EEOC charge. I was discharged allegedly because the company had "trust issues" with me after the false allegations were made.
>
> I believe that I was suspended and discharged in retaliation for filing a disability-related EEOC charge (Charge No. 461-2018-01550) in violation of the Americans with Disabilities Act, as amended. I reported my coworkers for mistreatment and not doing their share of work and my coworkers, in turn, reported that I was taking photos and information from patient charts for my for my (sic) EEOC charge which was not true.

On May 1, 2019,[1] the EEOC issued a right to sue letter on the first charge, Charge Number 461-2018-01550, pertaining to the alleged ADA violation. Ms. Robertson alleges in her complaint that the "EEOC charge regarding defendant's disciplinary conduct" remains "pending."

On July 29, 2019, Ms. Robertson sued Greenbrier Hospital, LLC and Acadia Healthcare, alleging that the defendants violated the Americans with Disabilities Act when they failed to promote or hire her for the full-time Recreational Therapist position due to her son's disability and that the defendants violated Title VII when they fired her in retaliation for the EEOC charge she filed pertaining to the alleged ADA violation. Ms. Robertson seeks reinstatement to the position of full-time Recreational Therapist, back and front pay, compensatory damages, punitive damages, and attorney's fees and costs. The defendants now move to dismiss her claims for failure to state a claim upon which relief may be granted.

---

[1] The handwritten date on the right to sue letter, which is attached to the complaint in this lawsuit, is illegible but appears to be either an "8" or a "5": thus, it appears that it was issued either August (8/1/19) or May (5/1/19). Notably, in her complaint, the plaintiff alleges that the EEOC issued a right to sue letter on May 1, 2019.

I.

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a party to move for dismissal of a complaint for failure to state a claim upon which relief can be granted. Such a motion is rarely granted because it is viewed with disfavor. See Lowrey v. Tex. A & M Univ. Sys., 117 F.3d 242, 247 (5th Cir. 1997) (quoting Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc., 677 F.2d 1045, 1050 (5th Cir. 1982)).

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009)(citing Fed. R. Civ. P. 8). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. at 678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

In considering a Rule 12(b)(6) motion, the Court "accept[s] all well-pleaded facts as true and view[s] all facts in the light most favorable to the plaintiff." See Thompson v. City of Waco, Texas, 764 F.3d 500, 502 (5th Cir. 2014)(citing Doe ex rel. Magee v. Covington Cnty. Sch. Dist. ex rel. Keys, 675 F.3d 849, 854 (5th Cir. 2012)(en banc)). But, in deciding whether dismissal is

warranted, the Court will not accept conclusory allegations in the complaint as true. Id. at 502-03 (citing Iqbal, 556 U.S. at 678).

To survive dismissal, "'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Gonzalez v. Kay, 577 F.3d 600, 603 (5th Cir. 2009)(quoting Iqbal, 556 U.S. at 678)(internal quotation marks omitted). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Twombly, 550 U.S. at 555 (citations and footnote omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."). This is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Id. at 678 (internal quotations omitted) (citing Twombly, 550 U.S. at 557). "[A] plaintiff's obligation to provide the

'grounds' of his 'entitle[ment] to relief'", thus, "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (alteration in original) (citation omitted).

Finally, "[w]hen reviewing a motion to dismiss, a district court 'must consider the complaint in its entirety, as well as other sources ordinarily examined when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." Funk v. Stryker Corp., 631 F.3d 777, 783 (5th Cir. 2011)(quoting Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007)). If the Court considers materials outside of the pleadings, the motion to dismiss must be treated as a motion for summary judgment under Rule 56. See Causey v. Sewell Cadillac-Chevrolet, Inc., 394 F.3d 285, 288 (5th Cir. 2004); see also Fed. R. Civ. P. 12(d).

## II.

Ms. Robertson's complaint presents two claims. First, she alleges that the defendants violated the Americans with Disabilities Act by failing to hire her for a full-time CTRS-Certified Recreational Therapist position because she has a son with an unidentified disability. Second, she alleges that the

9

defendants violated Title VII by terminating her employment as a part-time Recreational Therapist in retaliation for filing an EEOC charge concerning the alleged ADA violation. Advancing various grounds, the defendants seek dismissal of both of Ms. Robertson's claims.

*A.*

First, the defendants first move to dismiss the plaintiff's associational disability discrimination claim for failure to state a claim. Because the Court agrees that the plaintiff has failed to allege certain essential elements of the claim (assuming such a claim is viable), the Court finds that dismissal is appropriate.

The Americans with Disabilities Act forbids employers from taking adverse action "because of the known disability of an individual with whom the qualified individual is known to have a relationship or association." 42 U.S.C. § 12112(b)(4). Even so, the viability of a cause of action for associational discrimination is unsettled. The Fifth Circuit "has not 'explicitly recognized a cause of action for discrimination based on association with a [disabled] individual, nor have we described what such a claim requires.'" Spencer v. FEI, Incorporated, 725 Fed.Appx. 263, 267 (5th Cir. 2018)(quoting Grimes v. Wal-Mart Stores Tex., L.L.C., 505 Fed.Appx. 376, 380 n.1 (5th Cir. 2013)).

Assuming without deciding that such a claim were viable, and further assuming that the McDonnell Douglas burden-shifting framework applied,[2] the Fifth Circuit instructs that a

> prima facie case of associational discrimination would require that the Plaintiff show (1) her qualification for the job, (2) an adverse employment action [such as failure to hire], (3) the employer's knowledge of the employee's disabled relative, and (4) that the adverse employment action occurred under circumstances raising a reasonable inference that the relative's disability was a determining factor in the employer's adverse action.

Grimes, 505 Fed.Appx. at 380 n.1. "Once an employee establishes her prima facie case, the burden shifts to the employer to 'articulate a legitimate, nondiscriminatory reason' for the adverse employment action." Delaval v. PTech Drilling Tubulars, L.L.C., 824 F.3d 476, 479 (5th Cir. 2016)(citation omitted). If the employer articulates such a reason, then the employee must present evidence that the articulated reason is pretextual. Id. (citation omitted). The Fifth Circuit "applies a 'motivating factor' test, which provides that 'discrimination need not be the

---

[2] "[D]irect evidence is rare." Clark v. Champion Nat'l Sec., Inc., --- F.3d ---, 2020 WL 205647, at *4 (5th Cir. 2020)(citation omitted). Neither side addresses whether Ms. Robertson will pursue a direct or circumstantial evidence theory. If an employee has no direct evidence of her Americans with Disabilities Act claim, then the McDonnell Douglas burden-shifting analysis applies. See Spencer v. FEI, Incorporated, 725 Fed.Appx. 263, 267 (5th Cir. 2018)(McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)); E.E.O.C. v. LHC Grp., Inc., 773 F.3d 688, 694 (5th Cir. 2014).

sole reason for the adverse employment decision ... [so long as it] actually play[s] a role in the employer's decision making process and ha[s] a determinative influence on the outcome.'" Id. at 479-80 (citation omitted).

Although this "framework...governs the standard of proof at trial," Ms. Robertson "'need not make out a prima facie case of discrimination [or retaliation] to survive a Rule 12(b)(6) motion to dismiss for failure to state a claim.'" See Stone v. Louisiana Dept. of Revenue, 590 Fed. Appx. 332, 339 (5th Cir. 2014)(quoting Raj v. Louisiana State University, 714 F.3d 322, 331 (5th Cir. 2013)). Rather, at the pleading stage, Ms. Robertson must "plead sufficient facts on all of the ultimate elements of a disparate treatment [or retaliation] claim to make h[er] case plausible." See Chhim v. Univ. of Texas at Austin, 836 F.3d 467, 470 (5th Cir. 2016); see also Stone, 590 Fed. Appx. at 339. To determine if sufficient facts are pled, "it can be helpful to reference the McDonnell Douglas framework on which [the plaintiff] would continue to rely if [s]he based h[er] claim on circumstantial evidence." Chhim, 836 F.3d at 470.

The defendants seek to dismiss the plaintiff's associational disability discrimination claim as insufficiently pled because Ms. Robertson fails to allege facts supporting certain essential

12

elements of her claim, including that she was qualified for the full-time CTRS-Certified Recreational Therapist position; that her employer knew that her son was disabled or exactly how he is disabled; that the position remained open or that she applied for the open position after the hiring freeze was lifted. The plaintiff opposes dismissal. Notably, however, Ms. Robertson does not contest the defendant's arguments concerning the sufficiency of her factual allegations; rather, she counters by advancing in argument various "facts" not contained in her complaint and she also points to certain "evidence."[3] She also requests leave to amend her complaint "in accordance with the foregoing" arguments advanced in opposition to the defendants' motion to dismiss.

To determine whether dismissal is appropriate, the Court considers only the factual allegations in the complaint. At this stage, resort to evidence like text messages or to factual assertions not contained in the complaint is improper. Considering the allegations of the complaint, the plaintiff fails to plead sufficient facts supporting a plausible associational disability discrimination claim. For example, she fails to allege facts that, if proved, indicate: she was qualified for the position for which

---

[3] Ms. Robertson attaches text messages that she suggests she advised her employer that she has a "special needs" child and she also argues that "[t]he record is abundantly clear that plaintiff was well qualified for the position."

she was not hired; that her employer knew she has a son with a disability; and that either the position for which she was not hired remained open or that she re-applied once the hiring freeze was lifted. Because Ms. Robertson has failed to allege sufficient facts *in her complaint* that would state a plausible claim for associational disability discrimination, her claim must be dismissed.

*B.*

Second, the defendants move to dismiss the plaintiff's retaliatory discharge claim, contending that the claim is premature and otherwise fails to state a claim for relief. Ms. Robertson alleges that the defendants violated Title VII of the Civil Rights Act when she suffered retaliation, in the form of termination, after lodging a charge with the EEOC alleging associational disability discrimination. Putting aside whether Title VII's or the ADA's antiretaliation provision would apply to the alleged facts,[4] the claim must be dismissed without prejudice for failure to exhaust administrative remedies.

---

[4] Title VII prohibits retaliation against persons who assert rights under the statute. 42 U.S.C. § 2000e-3(a). Similarly, the ADA provides:

> No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual

A plaintiff must exhaust her administrative remedies before pursuing employment discrimination claims in federal court. Taylor v. Books A Million, Inc., 296 F.3d 376, 378-79 (5th Cir. 2002); Melgar v. T.B. Butler Publishing Company, Inc., 931 F.3d 375, 378-79 (5th Cir. 2019)(citations omitted)(citing case noting that the ADA incorporates by reference Title VII's administrative procedures). This exhaustion occurs when the complainant files a charge with the Equal Employment Opportunity Commission, § 2000e-5(e)(1), (f)(1); 29 U.S.C. § 626(d), and then "receives a statutory notice of right to sue." Taylor, 296 F.3d at 379. This charge-filing prerequisite to suit is a non-jurisdictional claim-processing rule that "promote[s] the orderly progress of litigation by requiring that the parties take certain procedural

---

    made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.

42 U.S.C. § 12203(a). "To show an unlawful retaliation, a plaintiff must establish a prima facie case of (1) engagement in an activity protected by the ADA, (2) an adverse employment action, and (3) a causal connection between the protected act and the adverse action." Nall v. BNSF Ry. Co., 917 F.3d 335, 348-49 (5 Cir. 2019)(citations omitted). Once a prima facie case is established, "the defendant must come forward with a legitimate, non-discriminatory reason for the adverse employment action." Id. at 349. If the defendant offers such a reason, then "the plaintiff must adduce sufficient evidence that the proffered reason is a pretext for retaliation. Ultimately, the employee must show that 'but for' the protected activity, the adverse employment action would not have occurred." Id.

15

steps at certain specified times." Fort Bend Cnty., Texas v. Davis, 139 S. Ct. 1843, 1849 (2019). To be sure, "[a]dministrative exhaustion is important because it provides an opportunity for voluntary compliance before a civil action is instituted." Stroy v. Gibson, 896 F.3d 693, 698 (5th Cir. 2018)(affirming dismissal of retaliation claim for failure to exhaust administrative remedies).

Here, the plaintiff filed suit on July 29, 2019. In her complaint, she concedes that she has not exhausted her retaliation claim: she alleges that the EEOC issued a notice of right to sue on May 1, 2019 as to her ADA associational discrimination charge, but she alleges that her retaliation charge, which she filed on April 18, 2019, remains "pending." In an effort to avoid dismissal on exhaustion grounds, Ms. Robertson argues in her opposition papers that "[t]he attachments to plaintiff's complaint clearly show that the EEOC combined the retaliation and termination charges and issued a right to sue on both of them on August 1, 2019." This argument directly contradicts the allegations of the complaint. And it is belied by a quick comparison of the two EEOC charges to the one right to sue letter attached to the complaint: the EEOC right to sue letter references only one charge number -- that is, Charge Number 461-2018-01550 -- which pertains to the alleged ADA associational discrimination violation. The plaintiff offers no

16

right to sue letter referencing Charge Number 461-2019-00162, which was the charge number assigned to Ms. Robertson's April 18, 2019 charge for retaliatory discharge.

In another effort to avoid dismissal of her retaliation claim, the plaintiff contends that she is not required to wait until the EEOC issues a notice of right to sue because administrative exhaustion is merely a claim-processing rule. She misunderstands both the process and case literature. That administrative exhaustion is a non-jurisdictional claim-processing rule does not defeat dismissal here. See Story, 896 F.3d at 698 ("Even though administrative exhaustion is not a jurisdictional requirement, it is still a requirement."); cf. Davis, 139 S. Ct. at 1849-51 (characterizing Title VII's charge-filing requirement as a "mandatory" claim-processing rule, which means that "a court must enforce the rule if a party 'properly raise[s]' it."). Here, the defendants promptly invoked the exhaustion defense in their motion to dismiss.[5] Ms. Robertson offers no argument suggesting how the

---

[5] The Court need not reach the defendants' arguments that Ms. Robertson's factual allegations fail to state a plausible retaliation claim. Likewise, the Court does not reach Acadia Healthcare, Inc.'s arguments that it is a separate and distinct legal entity, that the plaintiff never filed a charge against Acadia, and that dismissal with prejudice of Ms. Robertson's claims is appropriate as to it. The Court merely observes that the plaintiff named "Acadian Behavior Health" as her employer in her first EEOC charge, that the EEOC's notice of right to sue was sent to Acadia Healthcare, and that the named party requirement or the

defendants forfeited the defense; nor does she offer any argument to excuse her premature filing.  The appropriate disposition of the plaintiff's unexhausted retaliation claim is thus dismissal without prejudice; the plaintiff may return to Court after she has exhausted her administrative remedy.  See Story, 896 F.3d at 698 n.2.

Accordingly, for the foregoing reasons, IT IS ORDERED that the defendants' motion to dismiss is GRANTED.  The plaintiff's retaliatory discharge claim is hereby dismissed without prejudice as premature.  The plaintiff's ADA associational discrimination claim is hereby dismissed without prejudice to the plaintiff's opportunity to file an amended complaint to cure the deficiencies with this claim, if she can in good faith do so, within 14 days.  Failure to do so will result in dismissal of this claim with prejudice without further notice.

New Orleans, Louisiana, January 22, 2020

_____
MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE

---

ADA's hybrid economic realities/common law control test are generally analyzed in the context of summary judgment motions. See, e.g., E.E.O.C. v. Simbaki, Ltd., 767 F.3d 475, 481 (5th Cir. 2014); Williams v. MMO Behavioral Health Systems, LLC, No. 16-11650, 2018 WL 5886523, at * 6-7 (E.D. La. Nov. 9, 2018).